**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Leanny Sorelbis Hernandez Torrealba,** | **Case No. 1:26CV00247** |
| **Petitioner,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **U.S. Department of Homeland Security, et al.,** | |
| | **MEMORANDUM OPINION & ORDER** |
| **Respondents.** | |

On January 30, 2026, Petitioner Leanny Sorelbis Hernandez Torrealba ("Petitioner" or "Hernandez") filed a Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus ("Petition"), in which she asserts that she has been detained by U.S. Immigration and Customs Enforcement ("ICE") for an unreasonably prolonged period of time without having received an individualized bond hearing, in violation of her Fifth Amendment Due Process rights. (Doc. No. 1.)  Shortly thereafter, on February 5, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO") and, in the alternative, for Preliminary Injunction. (Doc. No. 5.)

On February 5, 2026, the Court denied Petitioner's request for a TRO and indicated that it would construe her Motion as seeking a preliminary injunction. (Doc. No. 7.)  Pursuant to an expedited briefing Order issued by this Court, Respondents Secretary of the United States Department of Homeland Security ("DHS"), ICE Field Office Director Robert Lynch, and the Attorney General of the United States (hereinafter referred to collectively as "the Federal Respondents") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) and Return of Writ on February 19, 2026. (Doc. No. 9.)  In addition, Respondent Geauga County Sheriff Scott A. Hildenbrand filed a separate Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on February 17, 2026. (Doc. No. 8.)  Petitioner

filed separate Responses to both Motions on March 5, 2026.  (Doc. Nos. 10, 11.)  The Federal Respondents filed a Reply in support of their Motion to Dismiss and Return of Writ on March 13, 2026.  (Doc. No. 12.)  At the Court's request, the parties submitted Supplemental Briefing regarding the issue of exhaustion on April 20, 2026 and April 27, 2026 (Doc. Nos. 15, 16.)

For the following reasons, Respondent Hildenbrand's Motion to Dismiss (Doc. No. 8) is GRANTED and the Federal Respondents' Motion to Dismiss (Doc. No. 9) is DENIED.  The Petition (Doc. No. 1) is GRANTED as set forth herein, and Petitioner's Motion for Preliminary Injunction (Doc. No. 5) is DENIED AS MOOT.

## I.      Factual Background[1]

### A.      Petitioner enters the United States, files for asylum, and is later detained by ICE after appearing for a hearing

Petitioner is a native of Venezuela.  (Doc. No. 1 at ¶ 12.)  She entered the United States on August 19, 2022 near Eagle Pass, Texas.  (*Id*. at ¶ 28; Doc. No. 5-2 at PageID# 60.)  DHS arrested Petitioner on that date and detained her for two days.  (*Id*.)  On August 21, 2022, DHS released Petitioner on her own recognizance pursuant to 8 U.S.C. § 1226(a).  (*Id*. at ¶ 29)  *See also* Doc. Nos. 5-3, 5-4 at PageID#s 62-65.  On that same date, DHS issued a Form I-862 Notice to Appear which charged Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i),[2] i.e., as an alien present

---

[1] In setting forth the factual background, the Court relies on the factual allegations in the Petition (Doc. No. 1), as well as certain attachments to Petitioner's Motion for TRO and Preliminary Injunction (Doc. Nos. 5-2 through 5-15), the Federal Respondents' Motion to Dismiss (Doc. Nos. 9-2 through 9-16), Petitioner's Response in Opposition to the Federal Respondents' Motion to Dismiss (Doc. Nos. 10-2 through 10-4), and Petitioner's  Notice to the Court (Doc. No. 13-1).

[2] Section 1182(a)(6)(A)(i) provides that:  "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

in the United States without being admitted or paroled.  (Doc. No. 5-3 at PageID# 62-63.)  Petitioner was ordered to appear before an Immigration Judge ("IJ") in Cleveland on January 14, 2023.  (*Id.*)

On August 2, 2023, Petitioner filed an application for asylum.  (Doc. No. 1 at ¶ 30.)  On May 27, 2025, the IJ conducted the first hearing in Petitioner's case.  (*Id* at ¶ 31.)  At the outset, the Government moved to dismiss the standard removal proceedings under 8 U.S.C. § 1229a and explained that it intended to proceed instead with expedited removal under 8 U.S.C. § 1225.  (*Id.*) The IJ granted the motion to dismiss and dismissed the standard removal proceedings over Petitioner's objection, who was unrepresented by counsel.  (*Id.*)

When Petitioner left the courtroom, ICE apprehended and detained her.  (*Id.* at ¶ 32.)  On that same date, ICE issued a Notice and Order of Expedited Removal (Form I-860).  (*Id.* at ¶ 33; Doc. No. 5-5 at PageID# 67.)  The upper section of the Notice and Order of Expedited Removal provides, in relevant part, that "[p]ursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a)  **** (7)(A)(i)(1) *** of the Act, as amended, and therefore are subject to removal, in that *** [y]ou are an immigrant not in possession of a .... valid entry document required by the Immigration and National Act. (*Id.*)  The lower section of the Notice and Order of Expedited Removal called for the signature of both the immigration officer and a supervisor.  (*Id.*)  Alternatively, the Notice and Order contained a box that could be checked, indicating that supervisory concurrence was obtained by telephone or other means.  (*Id.*)  This lower section of Petitioner's Notice and Order of Expedited Removal, however, was left blank.  (*Id.*)

3

On June 25, 2025, Petitioner (through new counsel) appealed the decision of the IJ dismissing her standard removal proceedings under § 1229a, to the BIA.[3]  (Doc. No. 1 at ¶ 34.)

### B. The Asylum Officer finds no credible fear of persecution, the IJ denies bond, and Petitioner appeals both findings

On June 25, 2025, an asylum officer conducted a credible fear interview with Petitioner and determined that Petitioner did not have a credible fear of persecution in Venezuela.  (*Id*. at ¶ 35.) Petitioner requested review of the negative credible fear determination by an IJ.  (*Id*.)

Separately, on July 17, 2025, an IJ conducted a custody redetermination (or bond) hearing in connection with the standard removal proceedings that were dismissed on May 27, 2025 and which (at that time) were on appeal to the BIA.  (*Id*. at ¶ 36.)  Relying on the BIA's decision in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025)[4] and ICE's policy dated July 8, 2025,[5] the IJ determined that he did not have jurisdiction to release Petitioner on bond.  (*Id*.)  *See also* Doc. No. 5-8 at PageID#s 76-77; Doc. No. 9-6 at PageID#s 176-178.  Petitioner appealed the IJ's bond decision to the BIA.  (*Id*.)

On July 20, 2025, Petitioner filed her first request for parole with ICE.  (Doc. No. 1 at ¶ 37; Doc. No. 5-9 at PageID# 79.)  As of the date of this Order, Petitioner has not received any decision from ICE regarding her request.  (Doc. No. 1 at ¶ 37.)

---

[3] Hernandez later moved to withdraw her appeal from the dismissal of her standard removal proceedings.  (Doc. No. 1 at ¶ 34.)  On September 9, 2025, the BIA granted Petitioner's motion to withdraw this appeal.  (*Id*. at ¶ 38.)

[4] On May 15, 2025, the BIA decided *Matter of Q. Li*, 29 I&N 66, 2025 WL 1442892 (BIA May 15, 2025).  In that decision, the BIA found that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under [1225(b)], and is ineligible for any subsequent release on bond under [Section 1226(a)]." *Matter of Q. Li,* 29 I&N at 69.

[5] On July 8, 2025, the Government announced a new policy in an internal memorandum entitled 'Interim Guidance Regarding Detention Authority for Applicants for Admission.'" Pursuant to this policy memo, the Government stated that it now deemed all persons who entered the United States without inspection 'applicants for admission' under Section 1225(a) and, therefore, subject to mandatory detention under Section 1225(b)(2)(A)." (Doc. No. 9-2 at PageID#s 160-161.)

## C.     Petitioner files her first Federal Habeas Petition ("*Hernandez I*")

On August 4, 2025, Petitioner filed her first habeas petition ("First Petition") with this Court pursuant to 28 U.S.C. § 2241.  *See Hernandez Torrealba v. DHS, et al.*, Case No. 1:25cv01621 (N.D. Ohio) (Barker, J.) ("*Hernandez I*") (Doc. No. 1.)  The case was assigned to the undersigned.  In her First Petition, Petitioner asserted that her detention by ICE was unlawful because (1) "by law, expedited removal orders cannot issue to individuals, like Petitioner, who have been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" under 8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7); and (2) ICE "had no authority to issue the purported expedited removal order because [Petitioner] is in ongoing removal proceedings under 8 U.S.C. § 1229a (and a person cannot be in two types of removal proceedings at the same time)."  (*Id*. at PageID#1.)  Petitioner further argued that she was not "ordered removed" because the Notice and Order of Expedited Removal issued by ICE "is not signed at all, let alone by a senior supervisory officer, as required by 8 C.F.R. § 253.3(b)(7)."[6]  (*Id.* at PageID# 11-12.)

Petitioner asserted claims for violations of (1) 8 U.S.C. § 1225(b) and its implementing regulations, and the Administrative Procedure Act ("APA") (Counts I and II); and (2) her Fifth Amendment Right to Procedural Due Process (Count III).  (*Id*. at PageID#s 11-13.)  Petitioner requested that this Court "find that there is no lawful expedited removal order issued against [her] and, therefore, order DHS to issue a Notice to Appear placing her back in [standard] removal proceedings under 8 U.S.C. § 1229a before an [IJ] where she can continue to pursue her claims for

---

[6] The record currently before this Court reflects that Petitioner's Notice and Order of Expedited Removal was subsequently signed by a supervisor and served on Petitioner on September 16, 2025. (Doc. No. 9-10 at PageID# 191.) *See also* Doc. No. 10 at PageID# 236 ("The purported expedited removal order was later perfected by Respondents.")

5

protection from removal" and be provided a hearing.  (*Id.* at PageID#s 2, 13.)  Petitioner further requested that the Court order her released from custody.  (*Id.* at PageID#s 2, 14.)

The Court issued an expedited briefing Order and Respondents filed a Motion to Dismiss and Return of Writ on August 11, 2025.  (Doc. Nos. 3, 6.)  Petitioner filed a Response on August 15, 2025.  (Doc. No. 7.)

On August 25, 2025, this Court issued a Memorandum Opinion & Order, in which it found that the First Petition should be dismissed without prejudice because Petitioner had failed to exhaust her administrative remedies.  (Doc. No. 8.)  The Court therefore granted Respondents' Motion to Dismiss and denied the First Petition without prejudice.  (*Id.*)

**D.      Petitioner files a new bond request, the IJ denies the request, and Petitioner appeals to the BIA**

On August 25, 2025, Petitioner filed a Motion for a Subsequent Custody Determination (i.e., bond hearing) in her immigration proceedings, arguing that there had been a material change in circumstances since the prior bond order.[7]  (Doc. No. 9-2 at PageID#s 139-150.)  The IJ set a hearing for September 4, 2025.  (Doc. No. 9-3 at PageID# 166.)  DHS opposed the Motion, and filed its own Motion to Vacate Bond Hearing.  (Doc. Nos. 9-3, 9-4 at PageID#s 166-173.)

On September 3, 2025, the IJ granted DHS's Motion to Vacate Bond Hearing and cancelled the hearing.  (Doc. No. 9-5 at PageID#s 174-175.)  The following day, Petitioner appealed the IJ's decision to dismiss her new bond request to the BIA, arguing that the IJ erred in failing to give her

---

[7] Specifically, Petitioner argued that the BIA's decision in *Matter of Akhmedov*, 29 I&N Dec. 166 (BIA 2025) constituted a material change in circumstances warranting a new bond request.  (Doc. No. 10 at PageID# 236.)

an opportunity to respond to DHS's Motion and claiming a procedural error.  (Doc. No. 9-7 at PageID#s 179-187.)  As of the date of this Order, that appeal remains pending.

### E.        Petitioner files her Second Federal Habeas Petition ("*Hernandez II*")

On September 8, 2025, Petitioner filed her second § 2241 Petition ("Second Petition"), again challenging her detention pending removal proceedings. *See Hernandez Torrealba v. DHS, et al.*, Case No. 1:25cv1864 (N.D. Ohio) (Barker, J.) ("*Hernandez II*").  Petitioner asserts that she filed the Second Petition based on the BIA's September 5, 2025 precedential decision in *Matter of Yajure Hurtado*, 29 I&N 216, 2025 WL 2674169 (BIA 2025).  In *Yajure Hurtado*, the BIA held that "[b]ased on the plain language of section 235(b)(2)(A) of the Immigration & Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."  Petitioner's Second Petition was assigned to the undersigned.

On September 11, 2025, this Court issued an Order noting that "[it] is abundantly clear from the Second Petition that Petitioner has not exhausted her administrative remedies."  (*Id*. at Doc. No. 5.)  The Court indicated that it had "serious concerns that Petitioner has improperly disregarded and violated" this Court's August 25, 2025 Opinion & Order regarding her First Petition and, therefore, declined to schedule an expedited hearing or order expedited briefing within three days, as requested by Petitioner.  (*Id*.)  Instead, the Court ordered Respondents to file a response to the Second Petition within 14 days.  (*Id*.)

Later that same day, Petitioner filed a Motion to Withdraw her Second Petition because "she no longer wishes to pursue the instant habeas Petition and has accepted her removal to Venezuela."  (*Id*. at Doc. No. 6.)  In the Motion, counsel for Petitioner also stated that she had explained to

Petitioner that withdrawal of the Second Petition meant waiving her right to seek relief through a future habeas petition concerning the detention at issue and that Petitioner acknowledged to her that she understood that she was waiving her rights and that her decision to withdraw the Second Petition was voluntary. (*Id*.) On September 12, 2025, the Court granted Petitioner's Motion to Withdraw her Second Petition and dismissed it with prejudice. (*Id*. at Non-Doc Order dated 9/12/25.)

### F. The IJ vacates the negative credible fear determination, places Petitioner back in standard removal proceedings, and schedules (and then cancels) a hearing

Shortly thereafter, on September 23, 2025, the IJ conducted a review of the asylum officer's June 25, 2025 determination that Petitioner did not have a credible fear of persecution in Venezuela. (Doc. No. 9-11 at PageID# 193.) The following day, the IJ issued an Order vacating the asylum officer's negative credible fear determination. (Doc. No. 1 at ¶ 39; Doc. No. 9-11 at PageID#s 193-194.) By operation of law, the IJ's vacatur cancelled the expedited removal order against Petitioner and DHS placed her back in standard removal proceedings under 8 U.S.C. § 1229a. (Doc. No. 1 at ¶ 39.)

DHS then issued a Notice to Appear charging Petitioner as removable under INA Section 212(a)(7)(A)(i)(I).[8] (Doc. No. 9-12.) On October 9, 2025, the IJ Issued a Finding of Removability and Scheduling Order. (Doc. No. 9-13.) Therein, the IJ (1) found that Petitioner was removable under INA Section 212(a)(7)(A)(i)(I) and (2) set deadlines for Petitioner to file any "relief applications." (*Id*.) Petitioner filed an application for asylum on October 27, 2025. (Doc. No. 5-12 at PageID# 89.)

---

[8] On October 8, 2025, Petitioner filed her second request for parole with ICE. (Doc. No. 1 at ¶ 40; Doc. No. 5-11 at PageID# 85.) As of the date of this Order, Petitioner has not received a decision on her request. (Doc. No. 1 at ¶ 40.)

The individual merit hearing on Petitioner's asylum application was scheduled for December 18, 2025.  (Doc. No. 1 at ¶ 42; Doc. No. 9-14.)  At that hearing, DHS filed a Motion to Pretermit Petitioner's asylum application under 8 U.S.C. § 1158(a)(2)(A) and 8 C.F.R. § 1250.11(h).  (Doc. No. 1 at ¶ 42; Doc. No. 9-15.)  In its Motion, DHS argued that Petitioner was barred from applying for asylum "because she is subject to the Asylum Cooperative Agreement (ACA) with Ecuador, *see agreement Between Government of the United States of America and the Government of the Republic of Ecuador Relating to the Transfer of Third-Party Nationals to Ecuador*, 90 Fed. Reg. 51,376 (Nov. 17, 2025) (U.S.-Ecuador ACA)."  (Doc. No. 9-15 at PageID# 206.)  DHS requested that the IJ "enter an order pretermitting [Petitioner's] applications for asylum, withholding and CAT protection, and expeditiously schedule this matter for a master calendar hearing."  (*Id*. at PageID# 209.)  Although Petitioner objected, the IJ cancelled the hearing on the merits of her asylum claim and scheduled a master calendar hearing to consider her removal to Ecuador.  (Doc. No. 1 at ¶¶ 42, 43.)

On January 7, 2026, Petitioner filed her third request for parole with ICE.  (Doc. No. 5-13 at PageID# 107.)  As of the date of this Order, she has not received a response.

### G.     Petitioner files a Federal Court Complaint ("*Hernandez III*") and her Third Federal Habeas Petition ("*Hernandez IV*")

Petitioner then filed another action in this Court.  Specifically, on January 10, 2026, Hernandez filed a Complaint for Declaratory and Injunctive Relief against DHS and the Executive Office for Immigration Review ("EOIR"), seeking declaratory and injunctive relief and requesting an expedited hearing.  *See Hernadez Torrealba v. DHS, et al*., Case No. 1:26cv0063 (N.D. Ohio) (Oliver, J.) ("*Hernandez III*").  The case was assigned to District Judge Solomon Oliver.

In the Complaint, Hernandez asserted that she had two claims arising under Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2018), and two claims arising under the

Fifth Amendment Due Process Clause.  Specifically, Hernandez asserted the following claims: (1) Action without Observance of Procedure Required by Law, in violation of 5 U.S.C. § 706(2)(D) (Count I); (2) Action in Excess of Statutory and Regulatory Authority, in violation of 5 U.S.C. 706(2)(C) (Count II);  (3) Violation of Fifth Amendment Procedural Due Process (Count III); and (4) Illegal Retroactive Application of the Asylum Cooperate Agreement with Ecuador (Count IV).  (*Id*. at Doc. No. 1, PageID#s 13–20.)   Hernandez asked the Court to: (1) assume jurisdiction; (2) declare that DHS "acted without observance of procedure required by law by raising the issue of a safe third country" at her final hearing; (3) declare that EOIR "acted in excess of its statutory and regularity authority by the partial grant of DHS's Motion to Pretermit;" (4) declare that the "retroactive application of the [ACA] with Ecuador . . . violates the Due Process Clause;" (5) order EOIR to conduct a final hearing on her claim for asylum; (6) award attorney's fees and costs; and (7) any further relief deemed just and proper.  (*Id*. at Doc. No. 1, PageID# 20.)

Three days later, on January 13, 2026, Hernandez filed a Motion for TRO or, in the Alternative, Preliminary Injunction in *Hernandez III,* requesting "immediate issuance of a Temporary Restraining Order . . . enjoining Defendant EOIR from conducting, on January 15, 2026, a hearing pertaining to Asylum Cooperate [sic] Agreement with Ecuador and ordering Defendant EOIR to conduct, on January 15, 2026, a hearing on the merits of Hernandez's asylum application."  (*Id*. at Doc. No. 3, PageID# 41.)

On January 14, 2026, Judge Oliver issued a Memorandum Opinion & Order denying Hernandez's Motion.  (*Id*. at Doc. No. 6.)  Specifically, Judge Oliver found that "Hernandez cannot demonstrate that a TRO or preliminary injunction is warranted, because the court lacks jurisdiction

over the claims in her Complaint; and, therefore, she necessarily cannot show likelihood of success on the merits."[9]  (*Id.* at Doc. No. 6, PageID# 190.)

Shortly thereafter, on January 30, 2026, Petitioner filed the instant Petition ("Third Petition") under 28 U.S.C. § 2241 ("*Hernandez IV*").  As detailed above, this is Petitioner's third habeas petition under § 2241.  It was assigned to the undersigned.  In her Third Petition, Petitioner asserts that she has been detained since May 27, 2025 by ICE at the Geauga County Jail in Chardon, Ohio "without ever having received an individualized bond hearing before an IJ."  (Doc. No. 1 at PageID# 1.) Petitioner maintains that her prolonged detention without an individualized bond hearing violates her due process rights and is causing her extreme mental anguish.  (*Id*. at PageID#s 1-2.)  Petitioner asserts a sole claim for relief, alleging a "Violation of her Fifth Amendment Right to Due Process." (*Id*. at PageID#s 9-10.)  She requests that the Court (1) declare that her prolonged detention without an individualized determination violates the Due Process Clause of the Fifth Amendment; (2) issue a Writ of Habeas Corpus ordering Respondents to release her from custody; (3) in the alternative, order Respondents to provide her with a bond hearing where Respondents bear the burden to justify continued detention by clear and convincing evidence; and (4) issue an Order prohibiting the Respondents from transferring Petitioner from the district without the court's approval.  (*Id.* at PageID# 11.)

### H.      Petitioner is ordered removed to Ecuador and appeals to the BIA

On February 3, 2026, the IJ conducted a hearing regarding Petitioner's asylum application. (Doc. No. 9-16 at PageID# 224.)  As set forth in a written Order issued the next day, the IJ denied

---

[9] Petitioner filed a Motion for Reconsideration on January 19, 2026, which remains pending as of the date of this Order. (*Id.* at Doc. No. 7.)  In addition, on March 27, 2026, Defendants DHS and EOIR filed a Motion to Dismiss the Complaint (*Id*. at Doc. No. 13,) which is not yet ripe and remains pending.

Petitioner's application and ordered her removed to Ecuador. (*Id*. at PageID# 224-227.) On February 28, 2026, Petitioner appealed the IJ's decision to the BIA. (Doc. No. 10-3 at PageID# 264.) As of the date of this Order, Petitioner's appeal of the IJ's removal order remains pending.

Meanwhile, the parties have been submitting briefing in Petitioner's administrative appeal of the IJ's September 3, 2025 decision denying her request for a bond redetermination and granting the DHS's motion to vacate the bond hearing. Specifically, in that appeal, DHS filed a Motion on March 18, 2026, asking the BIA to summarily affirm the IJ's decision. (Doc. No. 13-1.) As of the date of this Order, the BIA has not issued a decision in Petitioner's appeal.

## II.     Procedural History of this Action

As noted above, Petitioner filed the instant § 2241 Petition on January 30, 2026, raising a sole claim for violation of her Fifth Amendment due process rights. (Doc. No. 1.) On February 5, 2026, this Court issued an expedited briefing order directing Respondents to respond to the instant Petition by no later than February 19, 2026 and providing that Petitioner may reply by no later than March 5, 2026.

A few hours after the Court issued its expedited briefing order, Petitioner filed the instant Motion for TRO and Preliminary Injunction. (Doc. No. 5.) Therein, Petitioner argues that she is likely to succeed on the merits of her due process claim and that she is suffering (and will continue to suffer) actual and irreparable harm as a result of her prolonged detention without an individualized bond hearing. (*Id.*) Petitioner requests that the Court order her immediate release or, in the alternative, order the IJ to conduct an individualized bond hearing where "Respondents bear the burden by clear and convincing evidence to demonstrate that [she] is either a danger to the community or a flight risk." (*Id*. at PageID# 57.)

12

On February 5, 2026, the Court issued an Order denying Petitioner's request for immediate issuance of a TRO.  (Doc. No. 7.)  The Court noted that Petitioner had offered no reason why Respondents should not be afforded the opportunity to respond to the Motion and/or Petition, nor had she adequately explained why the expedited briefing schedule already established by this Court would be insufficient.  (*Id.*)  The Court stated that it would instead construe Petitioner's Motion as seeking a preliminary injunction, and ordered Respondents to address Petitioner's request for preliminary injunctive relief when they file their Response to the Petition on February 19, 2026.  (*Id.*)  The Court further found that Petitioner may respond by March 5, 2026.  (*Id.*)

On February 17, 2026, Respondent Hildenbrand filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 8.)  Two days later, on March 19, 2026, the Federal Respondents filed a combined Motion to Dismiss the Petition pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Brief in Opposition to Petitioner's Motion for Preliminary Injunction.  (Doc. No. 9.) On March 5, 2026, Petitioner filed Responses to both Motions, as well as Reply in support of her Motion for Preliminary Injunction.  (Doc. Nos. 10, 11.)  On March 13, 2026, the Federal Respondents filed a Reply in support of their Motion to Dismiss.  (Doc. No. 12.)

On April 13, 2026, this Court issued an Order directing the parties to submit Supplemental Briefing regarding the issue of whether to require Petitioner to further exhaust her administrative remedies.  (Doc. No. 14.)  The Federal Respondents submitted their Supplemental Brief on April 20, 2026, and Petitioner submitted her Supplemental Brief on April 27, 2026.  (Doc. Nos. 15, 16.)

**III.    Standards of Review**

    **A.    Preliminary Injunction**

When considering a motion for preliminary injunction, the Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *See National Credit Union Administration Board v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). *See also Palmer v. Harris*, 2018 WL 6062305 at *6 (N.D. Ohio Nov. 20, 2018). These factors should be balanced against each other but are "not prerequisites that must be met." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). *See also Avery Dennison Corp. v. Juhasz*, 924 F.Supp.2d 893, 899 (N.D. Ohio 2013).

A party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

**B.     Fed. R. Civ. P. 12(b)(1) and (b)(6)[10]**

As noted above, Respondent Hildenbrand moves to dismiss the Petition pursuant to Rule 12(b)(6), and the Federal Respondents move to dismiss pursuant to both Rules 12(b)(1) and (b)(6). The Court will set forth both standards of review, below.

---

[10] District courts routinely apply the familiar standards of review for motions to dismiss under Rule 12(b)(1) and 12(b)(6) (set forth *infra*) in the context of evaluating motions to dismiss habeas petitions filed pursuant to 28 U.S.C. § 2241. *See, e.g., Agarwal v. Lynch*, 610 F.Supp.3d 990, 997-998 (E.D. Mich. 2022); *Bear v. United States Bureau of Prisons*, 2024 WL 4792069 at * 2 (N.D. Ohio Nov. 14, 2024), *adopted by* 2024 WL 5075155 (N.D. Ohio Dec. 11, 2024); *Dale v. Healy*, 2025 WL 1809117 at * 2 (N.D. Ohio July 1, 2025), *adopted by* 2025 WL 2243930 (N.D. Ohio Aug. 6, 2025).

### 1.      Fed. R. Civ. P. (b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject-matter jurisdiction of the court.  *See* Fed. R. Civ. P. 12(b)(1).  Because federal courts are "courts of limited jurisdiction," *McGhee v. Light*, 384 F. Supp. 3d 894, 896 (S.D. Ohio 2019) (quoting *EBI-Detroit, Inc. v. City of Detroit*, 279 Fed. Appx 340, 344 (6th Cir. 2008)), "a federal court that lacks subject-matter jurisdiction 'lacks the power to hear a case.'"  *Chapman v. Seuffert*, 713 F. Supp. 3d 425, 433 (N.D. Ohio 2024).  The standard of review of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction.  *See Cartwright v. Garner*, 751 F.3d 752, 759-760 (6th Cir. 2014).

Here, the Federal Respondents do not indicate whether they are making a facial or factual challenge.  However, based on the Federal Respondents' briefing and in the absence of any argument to the contrary, the Court construes the Federal Respondents' Motion to Dismiss as raising a facial challenge.[11]  A facial challenge "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the [Petition] as true."  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  To survive a facial attack, the Petition must contain a short and plain statement of the grounds for jurisdiction.  *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387  (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME, Local 11*, 397 F. Supp. 3d 1076, 1081-82 (S.D. Ohio 2019).

### 2.      Fed. R. Civ. P. 12(b)(6)

---

[11] The Court reaches this conclusion because the Federal Respondents' Motion and Reply contain language purporting to challenge the legal sufficiency of Petitioner's jurisdictional allegations. Moreover, the Federal Respondents do not introduce extrinsic evidence to attack the existence of subject matter jurisdiction, relying instead of documents that are part of the immigration record and "thus incorporated by reference in the Petition."  (Doc. No. 9-1 at PageID# 128, fn 1.)

In order to survive a motion to dismiss under Rule 12(b)(6), "a [Petition] must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Petition raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint (or, here, petition) states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a pleading for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim

is and the grounds upon which it rests.'"  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)).

## IV. Analysis

### A. Respondent Hildenbrand's Motion to Dismiss (Doc. No. 8)

In the Petition, Petitioner alleges that she is "currently detained at the Geauga County Jail in Chardon, Ohio." (Doc. No. 1 at ¶ 12.)  She alleges that "Respondent Scott A. Hildenbrand is the Sheriff of Geauga County and, in this capacity, is the head of the Geauga County Jail, has physical custody of Ms. Hernandez and is a legal custodian of her."  (*Id*. at ¶ 16.)  Petitioner states that Respondent Hildenbrand is sued in his official capacity only.  (*Id*.)  She goes on to allege that that "Respondent Robert Lynch is the Field Office Director of the ICE office in Detroit, Michigan" and that he is "a legal custodian of Ms. Hernandez."  (*Id*. at ¶ 15.)  Petitioner further alleges that Respondent Secretary of the DHS has "ultimate custodial authority" over her.  (*Id*. at ¶ 13.)

Respondent Hildenbrand argues that he is not a proper respondent in this action.  (Doc. No. 8.)  He asserts that, although Geauga County has a contract to provide detention services for ICE, it is ICE that has had "custody and control" over Petitioner at all times relevant to the instant Petition. (*Id*. at PageID# 125.)  Citing *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), Hildenbrand argues that the Sixth Circuit has "established that, in this jurisdiction, the proper respondent in relation to an alien seeking a writ of habeas corpus is the District Director of [ICE] in the district in which the alien is being detained."  (*Id*.)  Respondent Hildenbrand maintains that he is, therefore, entitled to dismissal under Rule 12(b)(6) because "Petitioner has failed to allege any facts that would support a position that this Respondent has the ability to provide the relief sought" in the Petition.  (*Id.*)

17

In response, Petitioner argues (summarily) that she "named the warden as a respondent out of an abundance of caution based on Supreme Court precedent and based on circuit law around the country that does require naming the warden." (Doc. No. 11.)  Petitioner does not acknowledge or address Respondent Hildenbrand's citation to the Sixth Circuit's decision in *Roman, supra* and instead, simply states that she "defers to the Court's ruling in this matter." (*Id.*)

Pursuant to 28 U.S.C. § 2243, a writ of habeas corpus may be issued by "the person having custody of the person detained."  In the context of a habeas corpus petition filed by an alien detained in a local detention facility contracted by ICE, the Sixth Circuit has held that "although the warden of each detention facility technically has day-to-day control over alien detainees, the [ICE District] Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners."  *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).  Therefore, the Sixth Circuit explained, "a detained alien generally must designate his immediate custodian – the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman*, 340 F.3d at 320.

Relying on *Roman,* district courts in this Circuit (including this one) have repeatedly found that the ICE Field Office Director is the proper respondent in a § 2241 habeas petition filed by a detained alien, and have dismissed other named respondents.  *See, e.g., Mendoza v. Raycraft,* 2025 WL 3157796 at * 8 (N.D. Ohio Nov. 12, 2025) (Barker, J.); *Woldeghergish v. Lynch*, 2025 WL 2469584 at * 1 (S.D. Ohio Aug. 5, 2025), *adopted by* 2025 WL 2468042 (S.D. Ohio Aug. 27, 2025); *Hango v. McAleenan*, 2019 WL 7944352 at *2-3 (N.D. Ohio Nov. 13, 2019), *adopted by* 2019 WL 6695829 (N.D. Ohio Dec. 9, 2019) (Lioi, J.) (granting motions to dismiss by DHS Secretary, USAG, and County Sheriff because only the Field Director of the ICE Detroit Field Office is the proper

18

respondent), *adopted by* 2019 WL 6695829 (N.D. Ohio Dec. 9, 2019); *Orozco-Valenzuela v. Holder,* 2015 WL 1530631 at * 4 (N.D. Ohio April 6, 2015) (noting that the Field Office Director of the Detroit Field Office of ICE is the proper respondent for a habeas petition brought by an alien in ICE custody at detention facilities in Ohio.)

Although not acknowledged, discussed, or cited by any of the parties, the Court notes that some district courts in this Circuit have recently found, under *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that the warden of the facility that has physical control over the petitioner is a proper respondent in a § 2241 habeas petition filed by a detained alien. *See, e.g., Aguilar v. Dunbar*, 809 F.Supp.3d 718, 725 (E.D. Mich. 2025); *Casaneda-Castano v. Olson,* 2026 WL 622863 at * 2 (E.D. Ky. March 5, 2026). Other district courts in this Circuit, however, have disagreed with this conclusion and found that "for habeas proceedings with petitioners facing deportation, *Roman*'s rule still applies, because application of that rule was explicitly left open by *Padilla*." *Romero Garcia v. Raycraft*, 2025 WL 3252286 at * 3, 5 (E.D. Mich. Nov. 21, 2025) (collecting cases). *See also Ba v. Raycraft*, 2026 WL 621548 at * 3 (E.D. Mich. March 5, 2026); *Xiao v. Raycraft*, 2026 WL 608337 at * 3 (E.D. Mich. March 4, 2026); *Duran-Rojas v. Raycraft*, 2026 WL 243205 at * 3 (E.D. Mich. Jan. 29, 2026); *Hango*, 2019 WL 6695829 at * 2.

Here, Petitioner does not cite any authority from this Circuit on this issue and raises no meaningful legal argument regarding the viability of the Sixth Circuit's decision in *Roman* in light of the Supreme Court's decision in *Padilla*. It is entirely deficient for Petitioner to make no reasoned legal argument and simply state that she "defers to the Court's ruling." (Doc. No. 11.) It is not this Court's function to make and support legal arguments on Petitioner's behalf, particularly where there appears to be a split among district courts on this issue. If Petitioner wished to oppose Respondent

Hildenbrand's Motion, she should have done so with a fully developed argument and citation to legal authority in this Circuit, including a discussion of the Sixth Circuit's decision in *Roman*. Having failed to do so, the Court finds that Petitioner has waived any opposition to Respondent Hildenbrand's Motion.

Accordingly, Respondent Hildebrand's Motion to Dismiss (Doc. No. 8) is granted.

**B.     Petitioner's Motion for Preliminary Injunction and Federal Respondents' Motion to Dismiss (Doc. Nos. 5, 9)**

In her Motion, Petitioner argues that she is entitled to a preliminary injunction because she is likely to succeed on the merits of her claim that her prolonged detention without an individualized bond hearing violates her Fifth Amendment due process rights. (Doc. No. 5-1 at PageID#s 49-55.) Applying the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976),[12] Petitioner first argues that "there is no dispute that [she] has a significant private interest in avoiding detention." (*Id*.) She next asserts that "the risk of erroneously depriving [her] of her freedom is intolerably high where no neutral arbiter has ever assessed her risk of flight and dangerousness." (*Id*.) Petitioner then maintains that "[e]ven though ensuring that persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest, there is no showing here that public safety or ensuring Ms. Hernandez's attendance at future proceedings requires her prolonged confinement." (*Id*.) Lastly, Petitioner argues that she is likely to succeed on the merits of her due process claim because (1) she has already been detained for over eight (8) months; (2) her detention is likely to continue given that "it is known that BIA appeals take more than six months;" (3) the excessive delay

---

[12] These factors include (1) the private interest that will be affected by official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail. *Mathews*, 424 U.S. at 335.

in her case was caused exclusively by the Federal Respondents; and (4) she is detained a county jail where she is held in conditions indistinguishable from criminal incarceration.  (*Id.*)

Petitioner next argues that the second preliminary injunction factor weighs heavily in her favor because she faces actual and imminent irreparable harm as a result of her prolonged detention. (*Id.* at PageID#s 55-56.)  She maintains that this harm is demonstrated by the fact that she is separated from her family and partner, her health is deteriorating, and it is more difficult for her to gather evidence and prepare her case against deportation.  (*Id.*)   Finally, Petitioner argues that the third and fourth preliminary injunction factors (i.e., the balance of equities and the public interest) weigh in her favor.  (*Id.* at PageID# 56.)  Specifically, she maintains that  "[the] equities – her prolonged detention in violation of her Fifth Amendment rights, her three-year residence in the United States complying with all requirements to asylum seekers, her employment and self-sufficiency, lack of any criminal history – far overweigh any ICE's interest in her continued detention."  (*Id.*)

In response, the Federal Respondents argue that Petitioner cannot show a likelihood of success on the merits and, therefore, her Motion should be denied and the Petition should be dismissed.  (Doc. No. 9-1 at PageID#s 132-137.)  The Federal Respondents assert that Petitioner's due process claim fails because this Court lacks jurisdiction to consider it under both 8 U.S.C. §§ 1252(g) and 1252(b)(9).  (*Id.*)   The Federal Respondents next argue that the Petition should be dismissed because Petitioner has failed to exhaust her administrative remedies.  (*Id.*)  Lastly, the Federal Respondents argue that Petitioner fails to state a due process claim because "she received all due process available to her under administrative immigration proceedings."  (*Id.*)

      **1.**      **Jurisdiction**

The Federal Respondents first argue that Petitioner cannot show a likelihood of success on the merits, and her Petition should be dismissed, because the Court lacks jurisdiction over Petitioner's due process claim under 8 U.S.C. §§ 1252(g) and 1252(b)(9).  (Doc. No. 9-1 at PageID#s 132-134.)  In response, Petitioner maintains that neither provision deprives this Court of jurisdiction over her detention-based due process claim.  (Doc. No. 10 at PageID#s 238-246.)  The Court will address the parties' arguments regarding §§ 1252(g) and 1252(b)(9) separately, below.

### a.    8 U.S.C. § 1252(g)

The Federal Respondents first argue (summarily) that § 1252(g) bars this Court's review of Petitioner's due process claim.  (Doc. No. 9-1 at PageID# 132.)  Citing non-binding authority from outside this Circuit, the Federal Respondents assert that this Court lacks jurisdiction pursuant to § 1252(g) because "the Secretary's decision to commence removal proceedings includes the decision to detain an alien pending such removal proceedings."  (*Id*.)

In response, Petitioner argues that § 1252(g) does not preclude jurisdiction because she "does not challenge her order of removal, but only her detention."  (Doc. No. 10 at PageID# 238.)  She maintains that the jurisdictional limits of § 1252(g) are narrow and cites Sixth Circuit authority for the proposition that "a district court's jurisdiction over [a petitioner's] detention-based claims is independent of its jurisdiction over the removal-based claims."  (*Id*.) (quoting *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018)).  In sum, Petitioner maintains that § 1252(g) is not applicable to her Petition because she "does not challenge Respondents' efforts to commence proceedings, adjudicate cases, or execute removal orders" but, instead, "asserts that her prolonged detention .... violates her Fifth Amendment due process rights."  (*Id*. at PageID#s 240-241.)

22

Section 1252 generally is "Congress's comprehensive scheme for judicial review of removal orders." *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1256–57 (11th Cir. 2020).  Of relevance here, § 1252(g) limits the jurisdiction of federal courts as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  The Supreme Court has declined to interpret this statute expansively, rejecting as "implausible" the notion that Congress intended § 1252(g) to cover "all claims arising from deportation proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). *See also Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020) (same).  Rather, the Supreme Court "narrow[ly] read[s]" § 1252(g) to only cover the "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno*, 525 U.S. at 482, 487 (emphasis in original).  *See also Regents of Univ. of Cal.*, 591 U.S. at 19.

Here, Petitioner does not challenge the government's decision to commence removal proceedings, adjudicate her case, or execute a removal order.  Instead, through her sole due process claim, Petitioner challenges only the constitutionality of her continued detention without a bond hearing.  As district courts in this Circuit have held, "[w]hile an immigrant's detention is technically related to the attorney general's decision to commence proceedings, that technical relation is insufficient to trigger § 1252(g)." *Lemus v. Lynch*, 2026 WL 496731 at * 5 (N.D. Ohio Feb. 23, 2026) (Lioi, J.)  *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) ("[In *Reno*,] [w]e did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the

23

three listed actions[.]") (citing *Reno*, 525 U.S. at 482–83)); *Alonso v. Tindall*, 2025 WL 3083920 at *2 (W.D. Ky. Nov. 4, 2025) (Hale, J.) ("A claim of unlawful detention does not arise from the commencement of removal proceedings 'within the meaning of § 1252(g) simply because the claim[] relate[s] to that discretionary, prosecutorial decision.'") (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2nd Cir. 2025)).

Indeed, the Sixth Circuit has drawn a jurisdictional distinction where (as here) a petitioner brings a claim challenging her detention as opposed to her removal. *See Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018). Notably, the Sixth Circuit has found that, in such cases, "the district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims." *Id.  See also Bartolon v. Bondi*, 813 F.Supp.3d 811, 821 (S.D. Ohio 2025). Accordingly, if a petitioner "raise[s] a challenge that [does] not require the district court to address the merits of her order of removal," Sixth Circuit precedent indicates that jurisdiction is not precluded by § 1252(g). *Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010). Thus, most courts in the Sixth Circuit that have addressed this issue agree that challenges to the government's failure to provide a detained alien with a bond hearing do not fall within the narrow scope of § 1252(g). *See e.g., Bartolon,* 813 F.Supp.3d at 821; *Lemus,* 2026 WL 496731 at * 5; *Lopez v. Noem*, 2026 WL 395202 at * 2-3 (N.D. Ohio Feb. 21, 2026) (Gaughan, J.); *Kaur v. Raycraft*, 2026 WL 709728 at * 4 (N.D. Ohio March 13, 2026) (Boyko, J.); *E.V. v. Raycraft,* 2025 WL 3122837 at * 5 (N.D. Ohio Nov. 7, 2025) (Pearson, J.); *Coronado v. Sec'y, Dep't of Homeland Security*, 2025 WL 3628229 at * 3-4 (S.D. Ohio Dec. 15, 2025) (Cole, J.); *Alonso*, 2025 WL 3083920 at *2.

Likewise, here, the Court finds that Petitioner's due process claim does not fall within the three specific categories enumerated in § 1252(g) or otherwise require the Court to address the merits

24

of her removal proceedings.  Thus, the Court finds that § 1252(g) does not bar review of Petitioner's detention-based due process claim.

### b.        8 U.S.C. § 1252(b)(9)

The Federal Respondents next argue that § 1252(b)(9) bars review of Petitioner's claim.  (Doc. No. 9-1 at PageID#s 133-134.)  They assert that § 1252(b)(9) "'channels judicial review of all [claims arising from deportation proceedings]' to a court of appeals in the first instance."  (*Id*.)  The Federal Respondents further note that 8 U.S.C. § 1252(a)(5) provides that such a petition is the exclusive means for judicial review of immigration proceedings.  (*Id*.)  The Federal Respondents maintain that "'[t]aken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue—legal or factual—arising from any removal-related activity can be reviewed only through the [petition-for-review] process.'"  (*Id*.) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)).  The Federal Respondents argue that these statutes bar district court review of the instant Petition because "Ms. Hernandez challenges the decision and action to detain her, and to continue to detain her without bond, which arises from DHS's decision to commence removal proceedings."  (*Id*.)  Thus, the Federal Respondents assert, Petitioner "must present her claims before the appropriate court of appeals, not here, because she challenges the government's decision to detain her."  (*Id*.)

Petitioner disagrees.  (Doc. No. 10 at PageID#s 243-246.)  Relying on the plurality decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), Petitioner argues that the Supreme Court explicitly rejected an expansive interpretation of § 1252(b)(9).  (*Id*.)  Petitioner further notes that numerous district courts in this Circuit have found that § 1252(b)(9) does not divest courts of subject matter jurisdiction over a noncitizen's detention-based habeas claims.  (*Id*.)  Petitioner argues that the out-of-Circuit case law cited by the Federal Respondents is distinguishable because, unlike those cases,

she "does not challenge the decision or the action to detain her, nor the basis upon which she is detained." (*Id.*)  Thus, Petitioner maintains, § 1252(b)(9) does not deprive this Court of jurisdiction over her detention-based due process claim.  (*Id.*)

As noted above, Section 1252 governs "[j]udicial review of a final order of removal[.]" *Lopez*, 2026 WL 395202 at * 3.  While § 1252(a)(2)(D) explicitly preserves the ability to petition for a writ of habeas corpus to raise a constitutional issue, § 1252(a)(5) makes the court of appeals "the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter[.]"  8 U.S.C. § 1252(a)(5).  *See also Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) ("The REAL ID Act clarified that final orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals.").  To that end, § 1252(b)(9) provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

As it did with § 1252(g), the Supreme Court has rejected an expansive view of the language of § 1252(b)(9).  Specifically, in *Jennings, supra*, a plurality of Supreme Court justices recognized that, while issues of detention and entitlement to bond hearings arguably "arise from" removal proceedings, such an expansive view of § 1252(b)(9) would have "staggering results." *Jennings*, 583 U.S. at 293.  The plurality explained:

> Suppose, for example, that a detained alien wishes to assert a claim under *Bivens* [ ], based on allegedly inhumane conditions of confinement. [ ] Or suppose that a detained alien brings a state-law claim for assault against a guard or fellow detainee.  Or suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck.  The "questions of law and fact" in all those cases could be said to "aris[e] from" actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd.

*Id*. (internal citations omitted).  Rejecting such an expansive reading, the plurality instead held that § 1252(b)(9) presents no jurisdictional bar where a claimant does not challenge a removal order, the decision to detain or seek removal in the first place, or the process by which removability would be determined.  *Id*. at 294–95.  A majority of the Supreme Court later adopted *Jennings*'s formulation of § 1252(b)(9), noting that "[a]s we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Regents of the Univ. of California*, 591 U.S. at 19 (citing *Jennings,* 583 U.S. at 294–95 (cleaned up)).  *See also Lemus*, 2026 WL 496731 at * 3.

Based on the above, numerous district courts in this Circuit have found that § 1252(b)(9) does not divest district courts of subject matter jurisdiction over an alien's detention-based habeas claims. *See Bartolon*, 813 F.Supp.3d at 822 ("Here, since Petitioner's detention-based claims squarely contest his detention under 8 U.S.C. § 1225 and whether he is entitled to a bond hearing, § 1252(b)(9) is no bar to this Court's jurisdiction.").  *See also Lopez*, 2026 WL 395202 at * 4; *Lemus,* 2026 WL 496731 at * 3-4; *Kaur,* 2026 WL 709728 at * 5-6; *Coronado*, 2025 WL 3628229 at * 4-5; *E.V.*, 2025 WL 3122837 at * 6-7; *Reyes-Martinez v. Woosley*, 2025 WL 3680330 at *3 (W.D. Ky. Dec. 18, 2025) (Jennings, J.); *Delgado v. Noem*, 2025 WL 3251144 at *4 (W.D. Mich. Nov. 21, 2025) (Jonker, J.).

27

Here, the Court agrees with Petitioner that § 1252(b)(9) does not bar jurisdiction. As discussed *supra*, Petitioner does not challenge a removal order, the initial decision of the government to detain her or seek removal, or the process by which her removability will be determined. Rather, Petitioner's sole challenge is to the government's failure to provide a bond hearing. Such a challenge does not fall within § 1252(b)(9). Accordingly, the Court finds that § 1252(b)(9) does not divest this Court of subject matter jurisdiction to consider Petitioner's detention-based claim.

### c.    8 U.S.C. §  1252(a)(2)

Lastly, in their Reply Brief, the Federal Respondents argue for the first time that this Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2). (Doc. No. 12 at PageID# 274.) Specifically, citing a recent decision from another district judge in this District, the Federal Respondents maintain that "the general rule under 8 U.S.C. § 1252(a)(2) is that courts lack jurisdiction to review all immigration matters—including matters raised in § 2241 habeas petitions." (*Id.*) (citing *Arellano Trujillo v. U.S. Attorney General*, Case No. 3:26cv549 (N.D. Ohio) (Calabrese, J.) (Doc. No. 4.) The Federal Respondents further assert (summarily) that, under § 1252(a)(2), "courts lack jurisdiction to review bond and detention determinations pending removal, since those determinations are discretionary." (*Id.*)

As an initial matter, courts "will generally not hear issues raised for the first time in a reply brief." *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001). If a party raises an argument for the first time in its reply brief, the party has waived the argument. *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 595 n.4 (6th Cir. 2008) (citing *Renkel v. United States*, 456 F.3d 640, 642 n.1 (6th Cir. 2006)). *See also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

However, because the Federal Respondents' argument implicates subject matter jurisdiction, this Court will nonetheless address it.[13]

For the following reasons, the Court finds the Federal Respondents' argument to be without merit.  In *Arellano Trujillo v. U.S. Attorney General*, Case No. 3:26cv549 (N.D. Ohio) (Calabrese, J.) (Doc. No. 4) and several other recent cases,[14] another district judge in this District has found that it lacks jurisdiction under Section 1252 to consider habeas cases challenging detention without the possibility of bond.  In each of these cases, the court explained, in relevant part, as follows:

> The statutory framework provides a limited role for district courts to review a habeas petition in the immigration context not concerning a final order of removal. 8 U.S.C. § 1252(a)(2)(D). That is, Section 1252 preserves the ability of district courts to review a petition for a writ of habeas corpus regarding a constitutional issue. *Id.*  For example, such claims might challenge the conditions of confinement or what amounts to indefinite detention. []
>
> Outside of such limited and narrow constitutional claims, which Petitioner does not raise, **other constitutional challenges quickly implicate and often become entwined with interpretation and implementation of the statutory framework and its associated procedures. Such is the case with Petitioner's claims here**. **Indeed, her first cause of action asserts a violation of the Immigration and Nationality Act. And, taken as a whole, her petition pursues that issue to a far greater degree than it outlines a claimed due-process violation**. There might well be good reason for that. In the immigration context, Congress has broad discretion to determine what process is due. [] **Put another way, a constitutional challenge to detention pending removal and entitlement to a bond hearing collapse into analysis of the statutory and regulatory regime—whether, for example, Section 1226(a) entitles an alien to a bond hearing pending removal or whether Section 1225 mandates that the government detain an alien**. Congress has made clear that district courts lack the jurisdiction to make such determinations, even on a habeas petition under Section 2241. *See* 8 U.S.C. § 1252(b)(9). As the Supreme Court has long recognized, these statutory provisions aim "at protecting the Executive's

---

[13] For purposes of any future filings in the context of § 2241 habeas immigration petitions, the Court cautions and reminds counsel for the Federal Respondents that new jurisdictional arguments should not be raised for the first time in reply briefs, as it deprives the petitioner of an opportunity to respond.

[14] *See, e.g., Amaya-Velis v. Raycraft*, --- F.3d ---, 2026 WL 100596 (N.D. Ohio Jan. 14, 2026) (Calabrese, J.); *Munoz-Nataren v. Raycraft*, --- F.3d ---, 2026 WL 214368 (N.D. Ohio Jan. 28, 2026) (Calabrese, J.).

> discretion from the courts—indeed, that can fairly be said to be the[ir] theme." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999).

*Munoz-Nataren*, 2026 WL 214368 at * 3 (internal citations omitted). *See also Amaya-Velis*, 2026 WL 100596 at * 3; *Arellano Trujillo*, Case No. 3:26cv549 (N.D. Ohio) (Doc. No. 4 at PageID#s 62-63).

Unlike the petitioners in the above cases, Petitioner herein does not raise a constitutional challenge that "implicate[s]" and/or is likely to "become entwined with interpretation and implementation of the statutory framework and its associated procedures." Rather, Petitioner's sole claim raises a due process challenge to her continued detention without a bond hearing. More specifically, unlike the petitioners in *Arellano Trujillo*, *Amaya-Velis*, and *Munoz-Nataren*, Petitioner herein does not allege a violation of the INA or argue "whether ... Section 1226(a) entitles an alien to a bond hearing pending removal or whether Section 1225 mandates that the government detain an alien." *Id.* Her constitutional challenge, then, does not "collapse into analysis of the statutory and regulatory regime" or otherwise raise the jurisdictional concerns in *Arellano Trujillo*, *Amaya-Velis*, and *Munoz-Nataren*. Accordingly, the Court finds that the Federal Respondents' reliance on *Arellano Trujillo*, *Amaya-Velis*, and *Munoz-Nataren* is misplaced and rejects their argument that this Court lacks jurisdiction under § 1252(a)(2).

For all the reasons set forth above, the Federal Respondents' Motion to Dismiss (Doc. No. 9) is denied to the extent it seeks dismissal on the basis of lack of subject matter jurisdiction.

### 2. Exhaustion of Administrative Remedies

The Federal Respondents next argue that the Petition should be dismissed because Petitioner has failed to exhaust her administrative remedies. (Doc. No. 9-1 at PageID# 135; Doc. No. 15.)

Petitioner disagrees and urges this Court to exercise its discretion to waive the exhaustion requirement given the length of her detention (nearly 11 months as of the date of this Order) and the unlikelihood that the BIA will rule in her favor as to either of her pending appeals.  (Doc. No. 10 at PageID#s 246-249; Doc. No. 16.)

The general rule is that "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself."  *Howell v. INS*, 72 F.3d 288, 291 (2nd Cir. 1995) (quoting *Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 740 (2nd Cir. 1992)) (internal quotation marks omitted).  *See also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2nd Cir. 2003).  "Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record."  *Beharry,* 329 F.3d at 56.  *See also Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175-176 (1st Cir. 2016) (noting that exhaustion allows "an agency the first opportunity to apply [its] expertise" and "obviat[es] the need for [judicial] review in cases in which the agency provides appropriate redress.")

The requirement of administrative exhaustion can be either statutorily or judicially imposed as a matter of prudence.  *See Beharry*, 329 F.3d at 56.  *See also Perkovic v. I.N.S.,* 33 F.3d 615, 619 (6th Cir. 1994) (holding that exhaustion requirements not written into the text of a statute are prudential, not jurisdictional); *Brito v. Garland,* 22 F.4th 240, 255 (1st Cir. 2021) ("There are two species of exhaustion: statutory and common-law."); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).  "The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'"  *Brito,* 22 F.4th at 255 (quoting *Anversa*, 835

31

F.3d at 174).  *See also Puga*, 488 F.3d at 815.  In other words, "exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress," but "courts have more latitude in dealing with exhaustion questions when Congress has remained silent."  *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997).

Here, the parties agree (and the Court presumes) that the requirement of administrative exhaustion in the instant matter falls within this Court's discretion.  *See* Doc. No. 9-1 at PageID# 135; Doc. No. 10 at PageID# 247.  *See Bartolon*, 813 F.Supp.3d at 823 ("No relevant statute commands administrative exhaustion within this context, so the Court's inquiry focuses upon prudential exhaustion.")  The Court notes that the parties fail to direct this Court's attention to any binding authority regarding the appropriate standard for evaluating whether to require exhaustion as a prudential matter.  And this Court is not aware of any binding Sixth Circuit precedent regarding the application of prudential exhaustion in this particular context.[15]  *See Lopez-Campos v. Raycraft,* 797 F.Supp.3d 771, 778 (E.D. Mich. 2025) (noting that the Sixth Circuit "has not formally adopted a standard for determining when prudential exhaustion applies" in the context of an alien's habeas petition challenging unlawful mandatory detention); *Bartolon*, 813 F. Supp. at 823.

Several other Circuits, however, have examined prudential exhaustion in similar circumstances and developed tests for evaluating whether to require habeas petitioners to exhaust their administrative remedies.  This Court has applied the Ninth Circuit's test for prudential exhaustion in this context and will do so again here.  *See Hernandez I,* 2025 WL 2444114 at * 8-9

---

[15] The Sixth Circuit has, however, held that, as a general rule, "[f]ederal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241." *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006). *See also Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981); *Aron v. LaManna*, 4 Fed. Appx. 232, 233 (6th Cir. 2001).

(N.D. Ohio Aug. 25, 2025); *Mendoza*, 2025 WL 3157796 at * 9.[16]   Under the Ninth Circuit's test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga,* 488 F.3d at 815 (citations omitted) (hereinafter "the *Puga* factors").  *See also Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).  If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

Nonetheless, even if the three *Puga* factors weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted).  *See also Beharry*, 329 F.3d at 62 (finding that exhaustion of administrative remedies may not be required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial

---

[16] As one district court noted, "the Sixth Circuit has endorsed [the Ninth Circuit's] procedure for challenging bond determinations, albeit in a short, unpublished order." *Monroy Villalta v. Greene,* 794 F.Supp.3d 528, 530 (N.D. Ohio 2025)(citing *Rabi v. Sessions*, 2018 U.S. App. Lexis 19661 (6th Cir. July 16, 2018)) (citing *Leonardo v. Crawford,* 646 F.3d 1157 (9th Cir. 2011)).  *See also Shweika v. DHS*, 2015 WL 6541689 (E.D. Mich. Oct. 29, 2015).  And in recent months numerous district courts in this Circuit have applied the Ninth Circuit's test for prudential exhaustion in the immigration context, including in the context of challenges to an IJ's denial of bond.  *See, e g*., *Rodriguez v. Noem*, 812 F.Supp.3d 751, 757 (W.D. Mich. 2025); *Lopez-Campos*, 797 F.Supp.3d at 778; *Singh v. Stevens*, ---- F.Supp.3d -----, 2026 WL 456489 at * 3-4 (N.D. Ohio 2026); *Bartolon*, 813 F.Supp.3d at 823-824; *Mejia v. Woosley*, 2025 WL 2933852 at * 2 (W.D. Ky. Oct. 15, 2025).

relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.") (quotation omitted).

Here, the Federal Respondents fail to specifically address any of the three *Puga* factors in either their Motion to Dismiss or their Reply Brief.  (Doc. No. 9-1 at PageID# 135; Doc. No. 12 at PageID# 275.)  Rather, the Federal Respondents argue generally that Petitioner should be required to exhaust her administrative remedies, noting that she currently has an appeal pending before the BIA challenging the IJ's September 3, 2025 dismissal of her bond request.  (Doc. No. 12 at PageID# 275.)

In her Response, Petitioner argues that all three *Puga* factors weigh in her favor.  (Doc. No. 10 at PageID#s 247-248.)  Petitioner maintains that the first *Puga* factor weighs in her favor because the question of whether her detention is unreasonably prolonged "is principally a legal question that does not require the record that would be developed by appealing to the BIA."  (*Id*.)  She asserts that the second *Puga* factor also weighs in her favor because "it does not appear that relaxing the exhaustion requirement would encourage the deliberate bypass of the administrative scheme because under *Matter of Yutare Hurtado* and *Matter of M-S*, [27 I&N Dec. 509, 2019 WL 1724249 (A.G. April 16, 2019)][17] the IJ does not have authority over a bond request."  (*Id*.)  Lastly, Petitioner argues that the third *Puga* factor weighs in her favor because "there is no agency mistake to correct" since "the BIA is bound by the Attorney General's decision in *Matter of M-S.*"  (*Id*.)

On April 13, 2026, this Court issued an Order directing the Federal Respondents to submit supplemental briefing addressing the following issues: (1) Petitioner's argument that there is no

---

[17] In *Matter of M-S*, the Attorney General of the United States determined that: "An alien who is transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture is ineligible for release on bond. Such an alien must be detained until his removal proceedings conclude, unless he is granted parole." *Matter of M-S*, 27 I&N Dec. 509.

longer any avenue for her to obtain a bond hearing in light of the Attorney General's decision in *Matter of M-S*, *supra*; (2) the impact, if any, of the IJ's Order of Removal to Ecuador on Petitioner's pending Bond Redetermination Appeal (including whether that appeal is now moot in light of the fact that that Appeal was filed "well before the IJ vacated the asylum officer's negative credible fear determination; DHS placed her back in standard removal proceedings; the IJ ordered Petitioner removed to Ecuador; and Petitioner appealed that order to the BIA"); and (3) whether there are any administrative avenues available to Petitioner to (a) contest inaction by ICE on her three parole requests; and (b) appeal any denial by ICE of Petitioner's parole requests, should ICE ultimately deny her requests.  (Doc. No. 14.)  Lastly, the Court directed the Federal Respondents to address and discuss each of the three *Puga* factors, particularly in light of the issues raised above.  (*Id*.)

On April 20, 2026, the Federal Respondents submitted their Supplemental Brief.  (Doc. No. 15.)  Therein, the Federal Respondents correctly note that Petitioner currently has two appeals pending before the BIA: (1) her appeal of the IJ's September 3, 2025 decision to dismiss her request for a bond redetermination ("Bond Redetermination Appeal"); and (2) her appeal of the IJ's February 3, 2026 denial of her asylum application and order of removal to Ecuador ("Removal Appeal").  (*Id*. at PageID# 289.)  In addition, the Federal Respondents note that Petitioner has three pending requests for parole pending before ICE ("Parole Requests").  (*Id*.)  Applying the three *Puga* factors, the Federal Respondents argue that Petitioner should be required to exhaust her administrative remedies with respect to each of these administrative avenues of relief.

Specifically, the Federal Respondents maintain that, if Petitioner's Removal Appeal is ultimately successful, "this could change her custody status, including potential release from detention."  (*Id*. at PageID# 293.)  Notably, the Federal Respondents acknowledge that Petitioner is

"unlikely to obtain" a bond hearing given *Matter of M-S, supra*, noting that "in light of this decision, Petitioner is currently ... ineligible for release on bond." (*Id*. at PageID#s 290-291.) The Federal Respondents emphasize, however, that "[i]f Petitioner succeeds in some form or fashion in her Removal Appeal, this could take her out of the realm of *Matter of M-S* and thereby clear a path for a change in her custody status, including potential release from detention." (*Id*. at PageID#s 291-292.) The Federal Respondents acknowledge that there are no briefing deadlines currently set in Petitioner's Removal Appeal.

Regarding Petitioner's Bond Redetermination Appeal, the Federal Respondents argue that this appeal "will only become moot when the Removal Appeal reaches administrative finality." (*Id*. at PageID# 290.) The Federal Respondents then maintain that all three *Puga* factors weigh in favor of requiring Petitioner to exhaust her administrative remedies,[18] asserting that both of Petitioner's pending appeals will involve interpreting and applying immigration laws and that waiving the exhaustion requirement will encourage the deliberate bypass of the administrative scheme. (*Id*. at PageID#s 294-295.)

Petitioner submitted her responsive Supplemental Brief on April 27, 2026. (Doc. No. 16.) Therein, Petitioner rejects the Federal Respondents' argument that "[i]f [Ms. Hernandez] prevails on this appeal and gets some sort of relief from removal, this could impact her custody status," including potentially creating a path for release. (*Id*.) In fact, Petitioner maintains that, if she prevails in her Removal Appeal, "her case will be remanded to the Immigration Court to consider her application

---

[18] Regarding Petitioner's Parole Requests, the Federal Respondents state that "there are no administrative avenues available to Petitioner to contest ICE's inaction on her parole requests or any subsequent denial of these requests." (*Id*. at PageID# 292.) Petitioner agrees that "[t]here is no possibility to challenge ICE's inaction" on her parole requests. (Doc. No. 16 at PageID# 322.)

36

for asylum in the United States," which would "not change the Immigration Judge's jurisdiction over [her] bond proceedings" because *Matter of M-S, supra* would still apply on remand.[19] (*Id*. at PageID# 319.)  Petitioner further asserts that, given her current administrative procedural posture, she "is not only ineligible for bond due to the lack of IJ jurisdiction, she cannot even file another request for a bond hearing."  (*Id*. at PageID# 321.)  Regarding her Bond Redetermination Appeal, Petitioner maintains that "[e]ven if the BIA agrees with [her] arguments that *Matter of Q Li* was inapplicable when she filed her Bond Appeal, [her] current situation is meaningfully different, so inapplicability of *Matter of Q Li* does not make her statutorily eligible for a bond hearing because now *Matter of M-S* controls."  (*Id*.)  In light of the above, Petitioner argues (as she did before) that all three *Puga* factors weigh in favor of waiving the exhaustion requirement.  (*Id*. at PageID#s 322-327.)  Lastly, Petitioner requests that, "[i]n the event if this Court decides that [she] is required to exhaust her Bond Appeal, she respectfully requests that this case be stayed for a period of sixty (60) days to allow the BIA to complete its adjudication of [her] bond appeal."  (*Id.* at PageID# 327.)

For the following reasons, the Court declines to require Petitioner to further exhaust her administrative remedies.  As noted above, even if the three *Puga* factors weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *Laing*, 370 F.3d at 1000.  *See also Beharry*, 329 F.3d at 62.  As discussed below, even assuming *arguendo* that some or all of the

---

[19] Petitioner further asserts: "Contrary to Federal Defendants' statement that Ms. Hernandez's successful Removal Appeal could impact her custody status, [] the only 'form or fashion' taking Ms. Hernandez out of the realm of *Matter of M-S* is acknowledgement, by DHS, that the expedited removal order was unlawfully issued and no transfer from expedited removal proceedings to full removal proceedings occurred. Absent such imaginary situation, there is no possibility for Ms. Hernandez to become statutorily eligible for a bond hearing."  (*Id*. at PageID# 320.)

*Puga* factors weigh in favor of requiring exhaustion, the Court will nonetheless exercise its discretion to waive the prudential exhaustion requirement given the particular circumstances presented.

As the Federal Respondents themselves acknowledge, despite the pendency of her Bond Redetermination Appeal, Petitioner is "unlikely to obtain a bond hearing" and is currently "ineligible for release on bond," in light of the Attorney General's decision in *Matter of M-S, supra*. (Doc. No. 15 at PageID#s 290-291.) Thus, the Court concludes that pursuit of Petitioner's administrative remedies relating to her Bond Redetermination Appeal would be a futile gesture. And even assuming *arguendo* that Federal Respondents are correct that "Petitioner's custody status could change as a result of the ultimate decision on [her] Removal Appeal," her Removal Appeal was just filed on February 28, 2026 and no briefing deadlines have been set by the BIA. (*Id*. at PageID# 290; Doc. No. 15-1 at PageID# 317.) As noted above*,* Petitioner has been detained in the Geauga County Jail without an individualized bond hearing since May 27, 2025—i.e., for <u>11 months and 1 day (a total of 336 days)</u> as of the date of this Order.[20] Petitioner has submitted an affidavit that she has suffered (and is continuing to suffer) physical and emotional harm as a result of her prolonged detention, averring that she is losing her hair and weight and is "highly depressed" as a result of being separated from her family. (Doc. No. 5-15 at PageID# 114.)

Upon careful consideration (and given the already prolonged length of Petitioner's detention without a bond hearing combined with the fact that she is unlikely to obtain a bond hearing in her Bond Redetermination Appeal and her Removal Appeal is not yet even briefed), the Court finds that irreparable harm will result in requiring Petitioner to further exhaust her administrative remedies.

---

[20] Petitioner argues that, given the current status of her administrative appeals, "it is reasonable to conclude that [she] will be detained without any possibility to request her release on bond for another year or more." (Doc. No. 16 at PageID# 320.)

Accordingly, and given the particular circumstances presented, the Court will exercise its discretion to waive the exhaustion requirement.

### 3. Due Process

The Court next proceeds to the merits of Petitioner's sole due process claim.  (Doc. No. 1 at PageID#s 9-10.)   Petitioner argues that her prolonged detention without an individualized bond hearing violates her Fifth Amendment due process rights.   (Doc. No. 5-1 at PageID#s 49-55.) Applying the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), Petitioner first argues that "there is no dispute that [she] has a significant private interest in avoiding detention." (*Id*.)  She next asserts that "the risk of erroneously depriving [her] of her freedom is intolerably high where no neutral arbiter has ever assessed her risk of flight and dangerousness." (*Id*.)  Petitioner then maintains that "[e]ven though ensuring that persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest, there is no showing here that public safety or ensuring Ms. Hernandez's attendance at future proceedings requires her prolonged confinement." (*Id*.)  Lastly, Petitioner argues that she is entitled to relief on her due process claim because (1) she has already been detained for over eight (8) months (as of the date of the Petition); (2) her detention is likely to continue given that "it is known that BIA appeals take more than six months;" (3) the excessive delay in her case was caused exclusively by the Federal Respondents; and (4) she is detained in a county jail where she is held in conditions indistinguishable from criminal incarceration. (*Id*.)

In response, the Federal Respondents argue that Petitioner fails to state a due process claim because "she received all due process available to her under administrative immigration proceedings."  (Doc. No. 9-1 at PageID#s 136-137.)  Relying on the Supreme Court's decision in

*Demore v. Kim*, 538 U.S. 510 (2003), the Federal Respondents maintain that the length of Petitioner's detention without bond is not constitutionally impermissible.  (*Id*.)  In this regard, the Federal Respondents assert that Petitioner "is being detained for the limited purpose of removal proceedings and determining her removability" and that "her due process claim fails because an alien cannot displace the substantive choice made by Congress to mandate detention pending removal proceedings."  (*Id*.)

In her Reply, Petitioner argues that *Demore* is distinguishable because that case involved the facial constitutionality of mandatory detention under § 1226(c) for noncitizens with certain criminal convictions during removal proceedings—which is not at issue herein.[21]  (Doc. No. 10 at PageID#s 251-252.)  She maintains that "*Demore* did not eliminate the viability of as-applied due process challenges to prolonged detention under any mandatory detention statute, as Ms. Hernandez raises here."  (*Id*.)  Lastly, Petitioner reiterates that each of the *Mathews* factors weigh strongly in favor of finding that her prolonged detention without a bond hearing violates her due process rights.  (*Id*. at PageID# 250.)

The Due Process Clause of the Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  As the Supreme Court has explained, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).  Therefore, aliens (such as Petitioner

---

[21]  For purposes of the instant matter, Petitioner does not dispute that she is presently being detained under the mandatory detention provision set forth in 8 U.S.C. § 1225(b)(1).  *See* Doc No. 10 at PageID#243 at fn 2; Doc. No. 16 at PageID# 325.

40

herein) are entitled to its protections. *See Kaur*, 2026 WL 709728 at * 13. Indeed, "'[i]t is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.* 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Thus, detainees "are entitled to notice and opportunity to be heard appropriate to the nature of the case." *Reyes Rodriguez v. Greene*, 2026 WL 574961 at * 11 (N.D. Ohio March 2, 2026).

Here, the Federal Respondents first argue that Petitioner's due process claim is foreclosed by the Supreme Court's decision in *Demore v. Kim*, 538 U.S. 510 (2003). In that case, Hyung Joon Kim (a citizen of South Korea) entered the United States in 1984, at the age of six, and became a lawful permanent resident of the United States two years later. *Id*. at 513. In July 1996, he was convicted of first-degree burglary in state court in California and, in April 1997, he was convicted of a second crime, "petty theft with priors." *Id*. The INS charged Kim with being deportable in light of these convictions and detained him pending his removal hearing pursuant to 8 U.S.C. § 1226(c), which provides that "[t]he Attorney General shall take into custody any alien who" is removable from this country because he has been convicted of one of a specified set of crimes. *Id*. (quoting 8 U.S.C. § 1226(c)).

Kim did "not dispute the validity of his prior convictions, which were obtained following the full procedural protections our criminal justice system offers." *Id*. Nor did he dispute the INS's conclusion that he was subject to mandatory detention under § 1226(c). *Id*. at 513-514. Rather than contesting whether he was properly detained under this statute, Kim filed a § 2241 habeas petition in district court challenging the constitutionality of § 1226(c) itself. *Id*. at 514. Specifically, Kim argued that his detention under § 1226(c) violated due process because the INS had made no determination that he posed either a danger to society or a flight risk. *Id*. The district court agreed that § 1226(c)'s

requirement of mandatory detention for certain criminal aliens was unconstitutional and therefore granted Kim's petition subject to the INS's prompt undertaking of an individualized bond hearing. *Id.* On appeal, the Ninth Circuit affirmed. *Id.*

The Supreme Court reversed. After first determining that it had jurisdiction to review a constitutional challenge to § 1226(c), the Court concluded that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as [Kim] be detained for the brief period necessary for their removal proceedings." *Id*. at 513. In so holding, the Court noted that Congress adopted § 1226(c) "against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens." *Id*. at 518. Given these considerations, and although acknowledging that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Court rejected Kim's argument that due process precludes the government from "detain[ing] him for the brief period necessary for his removal proceedings." *Id*. at 522-523.

In so finding, the Court highlighted two key distinctions between mandatory detention under § 1226(c) (for aliens, such as Kim, who had committed certain criminal acts) and detention under § 1231(a)(6) (for aliens who are subject to a final order of removal). The latter provision was at issue in *Zadvydas v. Davis*, 533 U.S. 678 (2001), in which the Supreme Court interpreted § 1231(a)(6) to permit the government to detain an alien for longer than 90 days and found that six-months is presumptively reasonable. *Zadvydas*, 533 U.S. at 701.[22] First, the *Demore* Court observed that aliens at issue in *Zadvydas* (who had been detained under § 1231(a)(6) after having been issued a final order

---

[22] The Supreme Court further held that, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*.

of removal) "were ones for whom removal was 'no longer practically attainable,'" thereby depriving detention of "its purported immigration purpose" of facilitating removal. *Id*. at 527. Second, the Court pointed out that "the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,'" while "the detention [in *Demore*] is of a much shorter duration." *Id*. at 528.

Indeed, the *Demore* Court cited data to the effect that, for 85% of § 1226(c) detainees, "removal proceedings are completed in an average time of 47 days and a median of 30 days," and that "[i]n the remaining 15% of cases, in which the alien appeals the decision ..., appeal takes an average of four months, with a median time that is slightly shorter." *Id. at 529.* Thus, the Court noted, "under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." *Id.* In light of the above, the Court concluded that Kim's due process claim failed. *Id*. at 531.

Here, the Federal Respondents rely on *Demore* for the proposition that "the length of [Petitioner's] detention without bond – eight months – is constitutionally permissible." (Doc. No. 9-1 at PageID# 136.) The Court finds Federal Respondents' reliance on *Demore* to be misplaced. As discussed above, *Demore* examined the constitutionality of the detention pending removal of an entirely different category of aliens (i.e., aliens who had been convicted of certain criminal offenses) pursuant to an entirely different mandatory detention provision (i.e., § 1226(c)), than is at issue herein. Moreover, the *Demore* Court's decision was shaped, at least in part, by the fact that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Demore,* 538 U.S. at 530.

43

Here, by contrast, it is undisputed that Petitioner has no criminal arrests or convictions, is not being detained pursuant to § 1226(c), and has been detained pending removal for just over eleven (11) months as of the date of this Order. Under similar circumstances, district courts within this Circuit have rejected the government's reliance on *Demore*. *See, e.g., Azalyar v. Raycraft,* 814 F.Supp.3d 926, 932 (S.D. Ohio 2026) (in evaluating petitioner's due process claim, finding *Demore* to be distinguishable because "Azalyar does not fit into the category of 'noncitizens who had committed certain enumerated offenses" outlined in § 1226(c)); *Hernandez-Cine v. Voorhies*, 2026 WL 972364 at * 5 (N.D. Ohio April 10, 2026) (finding that "*Demore* is narrower than claimed" and concluding that it is distinguishable because "Petitioner has no criminal arrests or convictions and, thus, § 1226(c) is inapplicable"); *Reyes Rodriguez*, 2026 WL 574961 at * 11 ("Since Petitioner does not fall under the ambit of section 1226(c), *Demore* is clearly distinguishable"); *Garcia Rodriguez v. Raycraft*, 2026 WL 656956 at * 8 (N.D. Ohio March 9, 2026) (same).

Having determined that *Demore* is not applicable, the Court proceeds to consider whether Petitioner's prolonged detention without a bond hearing violates her due process rights under the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).[23] Under that test, the Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the

---

[23] District courts in this Circuit have applied the *Mathews* factors in evaluating petitioner's due process claims in this context. *See, e.g., Lemus,* 2026 WL 496731 at * 13; *Azalyar,* 814 F.Supp.3d at 933; *Hernandez-Cine,* 2026 WL 972364 at * 6; *Reyes Rodriguez,* 2026 WL 574961 at * 12; *Soto-Medina v. Lynch,* --- F.3d ----, 2026 WL 161002 at * 7-8 (W.D. Mich 2026).

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Id*. at 335.

Here, the Court finds that the *Mathews* analysis weighs in Petitioner's favor.[24]  Regarding the first *Mathews* factor, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  Here, it is undisputed that Petitioner has been living in this country since August 2022 and thus has created a cognizable interest in her continued freedom from detention.  *See, e.g., Azalyar*, 814 F.Supp.3d at 933; *Hernandez-Cine*, 2026 WL 972364 at * 6; *Lemus*, 2026 WL 496731 at * 14.  *See also Hernandez-Fernandez*, 2025 WL 2976923 at *9 (W.D. Tex. Oct. 21, 2025) ("Because he spent nearly three years at liberty in the United States, Hernandez-Fernandez possesses a cognizable interest in his freedom from detention.") Accordingly, and in the absence of any meaningful argument to the contrary from the Federal Respondents, the Court finds that the first *Mathews* factor weighs in Petitioner's favor.

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.'" *Azalyar,* 814 F.Supp.3d at 934 (quoting *Hernandez-Fernandez*, 2025 WL 2976923 at *9).  Although Petitioner herein did technically appear before an IJ for a bond hearing, the IJ felt bound by agency determinations and guidance purporting to strip jurisdiction.  As a result, the Court finds (for purposes of this factor) that Petitioner's bond

---

[24] Notably, although Petitioner discussed and applied the *Mathews* test in her Motion and this test is routinely applied by district courts in this Circuit, the Federal Respondents failed to acknowledge or address the *Mathews* test in any of their briefing before this Court.

hearing was not constitutionally adequate because the IJ did not "make an individualized assessment of the [alleged] need to re-detain [her]." *Id. See, e.g., Reyes Rodriguez*, 2026 WL 574961 at * 12.

As the Supreme Court has explained, civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas,* 533 U.S. at 690. Without a meaningful individualized pre-detention hearing, there is a significant risk of the erroneous deprivation of the liberty interest of remaining out of custody. *See, e.g., Hernandez-Cine*, 2026 WL 972364 at * 6 (finding that "an individualized bond hearing ensures that an immigration judge can assess whether a noncitizen poses a flight risk or a danger to the community, thereby mitigating the erroneous deprivation of noncitizen's liberty interests.") As of the date of this Order, it is undisputed that Petitioner has not had an individualized bond hearing, with the assistance of counsel and the ability to present evidence. Nor have the Federal Respondents argued or demonstrated that Petitioner is a flight risk or a danger to the community. Thus, because of a high risk of erroneous deprivation of Petitioner's liberty interest, the Court finds that the second *Mathews* factor weighs in Petitioner's favor.

The final *Mathews* factor concerns the Unites States' interest, as well as any financial or administrative burdens associated with permissible alternatives. *Mathews*, 424 U.S. at 335. The Court recognizes that the government has a significant legitimate interest in ensuring that aliens appear for removal hearings and do not pose a danger to the community. However, "a 'routine bond hearing' before an IJ presents 'minimal' burdens to the United States." *Reyes Rodriguez*, 2026 WL 574961 at * 12 (quoting *Hyppolite v. Noem*, 808 F.Supp.3d 474, 494 (E.D.N.Y. 2025)). Moreover, the Federal Respondents will also have an opportunity to present their case at any individualized bond

redetermination hearing, so there is no risk that requiring such a hearing will impede the government's interests.

Accordingly, and for all the reasons set forth above, the Court finds that all three *Mathews* factors weigh in Petitioner's favor. The Court therefore finds that Petitioner is entitled to an individualized bond hearing before a neutral IJ.

Having concluded that Petitioner's prolonged detention without a bond hearing violates her due process rights, the Court must determine the appropriate remedy.  Petitioner requests immediate release from custody or an Order requiring the Federal Respondents to provide her with an individualized bond hearing where the Federal Respondents bear the burden to justify her continued detention by clear and convincing evidence.  (Doc. No. 1 at PageID# 11.)  Upon consideration, the Court declines to order Petitioner's immediate release from custody and instead orders the Federal Respondents to provide Petitioner with a bond hearing within seven (7) days of the date of this Order.[25]  As requested by Petitioner (and in the absence of any argument to the contrary), at that hearing, the Federal Respondents shall bear the burden of proof by clear and convincing evidence that Petitioner's continued detention is justified or warranted.[26]

## V.    Conclusion

---

[25] District courts in this Circuit addressing similar issues agree that a more appropriate remedy is a bond hearing before an immigration judge.  *See, e.g., E.V.*, 2025 WL 3122837 at *12 (collecting cases) ("When the case concerns procedural due process violations, the appropriate remedy is to afford the proper procedure."); *Reyes Rodriguez*, 2026 WL 574961 at * 15.

[26] The Court makes clear that this Opinion should not be construed as holding that the Attorney General's decision in *Matter of M-S, supra* is facially unconstitutional. Rather, this Court holds only, that under the very particular circumstances presented herein, Petitioner's prolonged detention (of just over 11 months as of the date of this Order) violates her Fifth Amendment due process rights.

For all the reasons set forth above, Respondent Hildenbrand's Motion to Dismiss (Doc. No. 8) is GRANTED.  The Federal Respondents' Motion to Dismiss (Doc. No. 9) is DENIED.  The Petition (Doc. No. 1) is GRANTED as set forth herein, and the Petitioner's Motion for Preliminary Injunction (Doc. No. 5) is DENIED AS MOOT.  The Court hereby ORDERS the Federal Respondents to hold a hearing no more than seven (7) days from the day of this Order to determine whether to release Petitioner on bond.  At that hearing, the Federal Respondents shall bear the burden of proof by clear and convincing evidence that Petitioner's continued detention is justified or warranted.  The Court further ORDERS the Federal Respondents to file, within fourteen (14) days from the day of this Order, a certificate of compliance certifying that the government has complied with this Order and stating whether Petitioner remains in custody.

**IT IS SO ORDERED.**

Dated:  April 28, 2026            *s/Pamela A. Barker*
                                              PAMELA A. BARKER
                                              UNITED STATES DISTRICT JUDGE